IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

IRMA GOMEZ, §
    Petitioner, §
  §
v. § EP-19-CV-212-FM
  §
UNITED STATES OF AMERICA §
    Respondent. §

## MEMORANDUM OPINION AND ORDER

Irma Gomez asks the Court to vacate her conviction in cause number EP-18-CR-132-FM-1 through a petition for a writ of error *coram nobis* under 28 U.S.C. § 1651(a). For the reasons discussed below, the Court will deny the petition.

## BACKGROUND AND PROCEDURAL HISTORY

Gomez, who was not a United States citizen, was indicted for the felony offense of transporting aliens within the United States for the purpose of commercial advantage and private financial gain, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (a)(l)(B)(i). *United States v. Gomez*, EP-18-CR-132-FM-1, Indictment, ECF No 21. She pleaded guilty, pursuant to a plea agreement, to a misdemeanor information charging her with aiding and abetting bringing an alien into the United States, in violation of 8 U.S.C. § 1324(a)(2)(A) and 18 U.S.C. § 2. She agreed to the following factual summary attached to the plea agreement:

> On or about December 17, 2017, N.Y.M.C., now referred to as MAT WIT, entered the United States from Mexico 11.5 miles west of the Tornillo Port of Entry .... Border Patrol Agents (BPA) ... observed a maroon/burgundy motor vehicle driving by the area. The motor vehicle had its lights turned off and the driver operating either a cellular phone or a GPS device. BPA then heard footsteps go towards the vehicle and a door slam shut on the same vehicle. The said vehicle then left the scene at a high rate of speed. BPA conducted a traffic stop of the said motor vehicle. The Defendant was the driver and operator of said motor vehicle. MAT WIT was a passenger in said motor vehicle. All occupants of the said motor vehicle were arrested. MAT WIT was determined to be an alien

to the United States and a citizen and national of Honduras with no documentation or authorization to be in the United States. The Defendant gave a voluntary statement in which she stated that she received a call from "Octavio" at 5PM that day asking her to pick up a female who was going to cross illegally. The Defendant agreed to pick up the undocumented alien. The Defendant admitted to going to the location and that the female entered her vehicle. Once MAT WIT entered the motor vehicle, the Defendant proceeded to drive off until she was stopped by BPA.

*Id.*, Plea Agreement 11, ECF No. 52. She also had the opportunity to review and consider the immigration consequences of her guilty plea in the plea agreement:

### IMMIGRATION CONSEQUENCES OF CONVICTION

Pursuant to the provisions of Federal Rule of Criminal Procedure 11(b)(1)(O), the Defendant recognizes that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States. The Defendant recognizes that pleading guilty may affect the Defendant's immigration status if the Defendant is not a citizen of the United States. The Defendant recognizes that if the Defendant is a naturalized U.S. citizen, the Defendant's conviction could result in denaturalization. Under federal law, a broad range of criminal offenses warrant removal from the United States, the denial or cancellation of certain immigration benefits, and/or denaturalization, including the offense(s) to which the Defendant has agreed to plead guilty pursuant to this Plea Agreement. The Defendant's offense(s) of conviction presumptively require(s) the removal of a defendant who is not a U.S. Citizen. However, removal and other immigration or denaturalization consequences are the subject of a separate proceeding, and the Defendant understands that no one, including the Defendant's attorney or the District Court, can predict with certainty the effect of conviction on the Defendant's immigration or naturalization status. The Defendant nevertheless affirms that the Defendant wants to enter a plea of guilty, regardless of any immigration or naturalization consequences that may result from the guilty plea and even if those consequences include the Defendant's removal from the United States or denaturalization. The Defendant acknowledges having been closely assisted by counsel and advised by counsel about the potential immigration or naturalization consequences that may arise from a guilty plea in this case.

*Id.*, at 2–3. She was sentenced to pay a $100 fine and a $25 assessment. *Id.*, J. Crim. Case, ECF No. 60.

Gomez filed a motion to vacate, set aside or correct her sentence under 28 U.S.C. § 2255. *Id.*, Mot. to Vacate, ECF No. 65. She alleged her trial counsel provided constitutionally

ineffective assistance by not properly investigating the immigration consequences of the offense:

> Attorney Saldivar obviously was deficient in his performance (under the Sixth Amendment and the *Strickland* prong) by negotiating a guilty plea to a Misprision of a Felony [sic]. Put another way, if Attorney Saldivar had spent any time researching the immigration consequences of a guilty plea to a Misprision of a Felony [sic], vis-à-vis a[n] offense or even contacting an immigration attorney to gain such advice, he would have discovered that Ms. Gomez would have been much better served by pleading guilty to Count One of the Indictment than to plead guilty to an Information charging her with Misprision of a Felony [sic].

*Id.*, Pet'r's Mem. in Supp. 10, ECF 65-1. She explained that because of this "error," she was placed in removal proceedings. Gomez asked the Court to vacate the conviction and sentence. *Id.*, at 11.

Respondent United States of America ("the Government") moved to dismiss. *Id.*, Resp't's Mot. to Dismiss, ECF No. 68. The Government noted the Court did not sentence Gomez "to a term of imprisonment, supervised release, or probation." *Id.*, at 3. Instead, it sentenced Gomez to pay a $100 fine and a $25 assessment. *Id.* According to 28 U.S.C. § 2255(a):

> ***A prisoner in custody*** under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, ***may move the court which imposed the sentence to vacate, set aside or correct the sentence.*** (***emphasis added***).

*Id.* (quoting 28 U.S.C. § 2255(a)). "A monetary fine is not a sufficient restraint on liberty to meet the 'in custody' requirement." *Id.* (quoting *United States v. Segler*, 37 F.3d 1131, 1137 (5th Cir. 1994) (quotation marks and further citations omitted)). Hence, Gomez was not "in custody," as required by 28 U.S.C. § 2255(a); "[a]s such, the Court [did] not have jurisdiction to review the § 2255 Motion." *Id.*

The Court agreed and granted the Government's motion to dismiss. *Id.*, Order Granting Mot. to Dismiss, ECF No. 70. The Court additionally denied Gomez a certificate of appealability.

In her petition for a writ of error *coram nobis*, Gomez again asserts her counsel provided constitutionally ineffective assistance:

> The error complained of is that Petitioner was denied effective assistance of counsel Petitioner was not properly advised of the immigration consequences that would befall if she plead guilty to aiding and abetting unlawful entry under Title 8 U.S.C. § 1324.
>
> Petitioner was not advised that by pleading guilty to a misdemeanor aiding and abetting under 8 U.S.C. § 1324 she would be removed from the United States as an aggravated felon with no chance to obtain any sort of relief from removal.
>
> . . . .
>
> Attorney Saldivar obviously was deficient in his performance (under the Sixth Amendment and the *Strickland* prong) by negotiating a guilty plea to a Misdemeanor Information charging a violation of Title 18 United Stas Code, Section 2, and Title 8, United States Code, Section 1324(a)(2)(A), Aiding and Abetting Bringing an Alien. Put another way, if Attorney Saldivar had spent any time researching the immigration consequences of a guilty plea to a Misdemeanor Information, under section 1324 (8 U.S.C. § 1324), he would have discovered that Ms. Gomez would have been much better served by pleading guilty under section 1325 (8 U.S.C. § 2 and 8 U.S.C. § 1325).

Pet'r's Pet. 3–4, ECF No. 1.

## LEGAL STANDARD

"The writ of *coram nobis* is an ancient common-law remedy designed 'to correct errors of fact.'" *United States v. Denedo*, 556 U.S. 904, 910 (2009) (quoting *United States v. Morgan*, 346 U.S. 502, 507 (1954)). "[T]he authority to grant a writ of *coram nobis* is conferred by the All Writs Act, which permits 'courts established by Act of Congress' to issue 'all writs necessary or appropriate in aid of their respective jurisdictions.'" *Id.* at 911 (quoting 28 U.S.C. § 1651(a)). It provides "an 'extraordinary remedy'. . . to a petitioner no longer in custody who seeks to

vacate his conviction in circumstances where 'the petitioner can demonstrate that he is suffering civil disabilities as a consequence of the criminal convictions and that the challenged error is of sufficient magnitude to justify the extraordinary relief.'" *United States v. Castro*, 26 F.3d 557, 559 (5th Cir. 1994) (citing *United States v. Morgan*, 346 U.S. 502, 511 (1954) and *United States v. Marcello*, 876 F.2d 1147, 1154 (5th Cir. 1989)). "The writ will issue only when no other remedy is available and when 'sound reasons exist[ ] for failure to seek appropriate earlier relief.'" *United States v. Dyer*, 136 F.3d 417, 422 (5th Cir. 1998) (quoting *Morgan*, 346 U.S. at 512 (alteration in original)). A petitioner seeking *coram nobis* relief must demonstrate (1) he is no longer in custody, (2) there are circumstances compelling the granting of the writ in order to achieve justice, (3) sound reasons exist for his failure to seek appropriate earlier relief, and (4) he continues to suffer legal consequences from his conviction which may be remedied by granting the writ. *Foont v. United States*, 93 F.3d 76, 78–79 (2nd Cir. 1996). "In addition, a petitioner bears the considerable burden of overcoming the presumption that previous judicial proceedings were correct." *Dyer*, 136 F.3d at 422 (citation omitted).

## ANALYSIS

Gomez pleaded guilty, pursuant to a plea agreement, to a misdemeanor information charging her with aiding and abetting bringing an alien into the United States. She does not now proclaim her actual innocence or dispute the factual summary in the plea agreement. Indeed, the evidence against her is compelling. And the plea agreement clearly advised her of the immigration consequences of her plea. *United States v. Gomez*, EP-18-CR-132-FM-1, Plea Agreement 2–3, ECF No. 52. Gomez only asserts her counsel erred by not negotiating a better plea agreement, which would have avoided any immigration consequences to her.

A movant may collaterally attack a sentence by alleging his counsel failed to meet the

Sixth Amendment requirement for an accused "to have the assistance of counsel for his defense." U.S. CONST. amend. VI. The Sixth Amendment not only guarantees a criminal defendant the right to counsel, but also the right to the effective assistance of counsel. *Lee v. United States*, 137 S. Ct. 1958, 1964 (2017). A court analyzes an ineffective assistance of counsel claim presented in a § 2255 motion under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). Under the *Strickland* test, to succeed on a claim of ineffective assistance of counsel, a movant must prove: (1) that his counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 689–94.

An attorney's effectiveness in negotiating a plea agreement does not turn on the final outcome of the proceeding, but on whether counsel exercised "reasonable professional judgment" based on "prevailing professional norms" and "counsel's perspective at the time." *Rompilla v. Beard*, 545 U.S. 374, 380–81 (2005) (citations omitted). The prejudice inquiry turns on "whether [the petitioner] would have accepted the offer to plead pursuant to the [different] terms" and whether the court and prosecutor would also have agreed to the deal. *Missouri v. Frye*, 566 U.S. 134, 150 (2012).

But Gomez—by making only a conclusory assertion that her counsel should have somehow obtained a better deal—fails to establish that her counsel was either deficient or prejudiced her cause. *See Murphy v. Dretke*, 416 F.3d 427, 436-37 (5th Cir. 2005) ("Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts, which requires a petitioner to plead facts in support of his claims.").

Furthermore, the writ of error *coram nobis* "will issue only to correct errors resulting in a complete miscarriage of justice." *Jimenez v. Trominski*, 91 F.3d 767, 768 (5th Cir. 1996). The evidence against Gomez was overwhelming, Gomez pleaded guilty to the charge, Gomez was found guilty after the Court conducted a plea colloquy under Federal Rule of Criminal Procedure 11. There was no absence of evidence against Gomez, no procedural error, and no miscarriage of justice. Gomez has not overcome the presumption that previous judicial proceedings were correct.

## CONCLUSION AND ORDERS

Accordingly, the Court finds Gomez is not entitled to the extraordinary remedy of a writ *coram nobis*. The Court, therefore, enters the following orders:

**IT IS ORDERED** that Gomez's petition for a writ of error *coram nobis* under 28 U.S.C. § 1651(a) is **DENIED** and her civil cause is **DISMISSED WITH PREJUDICE**.

**IT IS ALSO ORDERED** that all pending motions, if any, are **DENIED** as moot.

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this case.

SIGNED this 26 day of August 2019.

FRANK MONTALVO
**UNITED STATES DISTRICT JUDGE**